IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-601-D

LINDA CELESTE VICK,      )
      )
      Plaintiff,      )
      )
      v.      )      **MEMORANDUM AND**
      )      **RECOMMENDATION**
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,      )
      )
      Defendant.      )

In this action, plaintiff Linda Celeste Vick ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 14, 16). Both parties submitted memoranda in support of their respective motions. (D.E. 15, 17). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 18). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.      **BACKGROUND**

      A.      **Case History**

Plaintiff filed an application for DIB on 17 February 2009 alleging a disability onset date of 29 December 2008. Transcript of Proceedings ("Tr.") 11. Her application was denied initially and again upon reconsideration, and a request for hearing was timely filed. Tr. 55-67. On 5 April 2011, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 23-37.

The ALJ issued a decision denying plaintiff's claim on 17 May 2011. Tr. 11-20. Plaintiff timely requested review by the Appeals Council. Tr. 6-7. The Appeals Council denied the request for review on 23 September 2011. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 27 October 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A person is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (d)(2)(A).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination

of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C.     Findings of the ALJ

Plaintiff was 41 years old on the alleged onset date of disability and 43 years old on the date of the administrative hearing. *See* Tr. 19 ¶ 7; 25-26. She has a high school education and past work as a housekeeper, kitchen aide, corrections officer, and prep cook. Tr. 19 ¶ 8; 27.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset date of 29 December 2008. Tr. 13 ¶ 2. At step two, the ALJ found that during this period plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): degenerative disc disease; hypothyroidism; headaches; depressive disorder; anxiety disorder; and somatoform disorder. Tr. 13 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 13 ¶ 4.

The ALJ determined that plaintiff has the RFC to perform light work,[1] subject to limitations to simple, routine, repetitive tasks and frequent, but not constant, overhead reaching. Tr. 14 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing past relevant work. Tr. 18 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including office helper, order caller, and mail clerk. Tr. 19 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 20 ¶ 11.

## II.    DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002);

---

[1] For the definition of light work, *see* 20 C.F.R. § 404.1567(b); *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work." The DOT is available at http://www.oalj.dol.gov/libdot.htm (last visited 9 Jan. 2013). The term "light work" and the terms for the other levels of physical exertion as used in the Regulations have the same meaning as in the DOT. 20 C.F.R. § 404.1567.

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## B.     Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ failed to properly determine plaintiff's RFC and to properly assess her credibility.   Each ground is examined in turn below.

## C.     Determination of Plaintiff's RFC

Plaintiff argues that she is disabled by orthopedic impairments (*e.g.*, neck pain, low back pain), migraine headaches, and mental impairments (*e.g.*, depression, post-traumatic stress disorder ("PTSD")), both individually and collectively.   She contends that in finding her able to perform a range of light work, the ALJ did not adequately account for the limiting effect of each set of impairments.   The court disagrees.

### 1.     Plaintiff's Orthopedic Impairments

With respect to her orthopedic impairments, plaintiff relies on the opinion of treating orthopedist Paul B. Suh, M.D.   He saw plaintiff once, on 15 December 2010.[2]   Tr. 425-28; *see also* Tr. 16 ¶ 5 & 18 ¶ 5 (ALJ's discussion of Dr. Suh's examination of and opinion about plaintiff).   On 30 March 2011,[3] he completed a medical source statement in which he found plaintiff capable of frequently lifting and carrying ten pounds, standing at least two hours in an eight-hour workday, and sitting less than six hours in an eight-hour day.   Tr. 453-54.   He also found her limited posturally to only occasional climbing, balancing, kneeling, crawling, or stooping.   Tr. 454.

---

[2] The note of this visit was electronically signed by a physician's assistant, not Dr. Suh.   Tr. 427.   Nevertheless, the ALJ found that Dr. Suh conducted the examination at that visit, Tr. 16 ¶ 5, and the parties do not contest that determination.

[3] The statement bears two signatures by Dr. Suh:   one dated 1 March 2011 and the other dated 30 March 2011 with the notation "Updated."   Tr. 456.

Plaintiff argues that Dr. Suh limited her to less walking and standing than required for sedentary work and therefore effectively determined her to be disabled. This contention is plainly wrong.

Sedentary work entails, in relevant part, lifting no more than ten pounds at a time, and walking and standing only "occasionally." 20 C.F.R. § 404.1567(a)[4]; *see also* DOT, App. C § IV, def. of "S-Sedentary Work."[5] As indicated in the DOT definition, "occasionally" signifies that the walking and standing occurs up to one-third of the time, which is equivalent to two hours and forty minutes (*i.e.*, 2 2/3 hours) in an eight-hour workday. DOT, App. C § IV, def. of "S-Sedentary Work." The Regulations, of course, provide that "sedentary" and the other terms for exertional levels in the Regulations "have the same meaning as they have in the [DOT]." 20 C.F.R. § 404.1567. Nevertheless, a Social Security Ruling states that "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5 (1983).

---

[4] This regulation defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

[5] This definition reads:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*DOT*, App. C § IV, def. of "S-Sedentary Work."

Plaintiff argues that Dr. Suh found plaintiff capable of standing and walking only two hours in an eight-hour workday. In fact, though, as indicated, Dr. Suh found plaintiff could walk and stand "*at least* two hours," not *at most* two hours. Tr. 254 (emphasis added). Thus, the limitations Dr. Suh found are not incompatible with sedentary work, even assuming it entails a two-hour limit on walking and standing. As a result, plaintiff is also erroneous in her related contention that because of the limitation on walking and standing recognized by Dr. Suh his opinion effectively signified that she is disabled.

Plaintiff contends that the VE testified that a hypothetical individual with the limitations Dr. Suh found would be unable to perform any competitive work because the limitations would prevent the individual from working an eight-hour workday.[6] Pl.'s Mem. 8 (citing Tr. 36). The hypothetical, though, was actually more restrictive than Dr. Suh's limitations. Like the foregoing contention by plaintiff, it posited the ability to stand "*no more* than two [hours] out of an eight-hour day," Tr. 36, not "*at least* 2 hours," as Dr. Suh found, Tr. 454. (Emphasis added). The VE determined, as a matter of simple math, that given a limitation of sitting less than six hours a day, the limitation of standing no more than two hours meant the hypothetical individual could not work an eight-hour day. Tr. 36. He stated, "those limitations would preclude the past relevant work and all other competitive work because it's less than an eight hour workday." Tr. 36. Since, however, according to Dr. Suh, plaintiff could stand at least two hours a day, her combined sitting and standing time could equal and, indeed, exceed eight hours a day.

The ALJ accorded Dr. Suh's opinion "little weight." Tr. 18 ¶ 5. Plaintiff argues that the ALJ erred in doing so.

---

[6] A person's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 July 1996) (emphasis original). A "regular and continuing basis" means eight hours a day for five days a week, or an equivalent work schedule. *Id.*

The standards for evaluation of medical source opinions are well established. The Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)[7]; *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). If the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. *Id.* § 404.1527(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii). Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, *5 (2 July 1996).

---

[7] Citation is to the version of the regulation in effect at the time the ALJ issued his decision, 17 May 2011.

The ALJ's evaluation of the opinion of Dr. Suh conformed to these standards. After reviewing Dr. Suh's findings and opinion (Tr. 16 ¶ 5; 18 ¶ 5), the ALJ explained that the opinion was entitled to little weight, in part, because it was inconsistent with the note of his office visit with plaintiff. Tr. 18 ¶ 5. Indeed, at that visit, Dr. Suh found a normal range of motion and joint stability in plaintiff's shoulders, elbows, and wrists; a full range of motion and joint stability in her hips, knees, and ankles; normal stance and gait; the ability to walk heel and toe; normal strength in the lower extremities without sensory deficits; and a negative straight leg raising test. Tr. 427. In a letter about the visit to the referring physician, Dr. Suh added that plaintiff did not have evidence of stenosis or disc herniation. Tr. 382. While an x-ray of plaintiff's lumbar spine showed disc narrowing at disk L4-L5 and L5-S1 and he diagnosed her with degenerative disc disease of the cervical and lumbar spine, he prescribed simply an anti-inflammatory and physical therapy. Tr. 427. The ALJ did not err in finding that these relatively benign findings by Dr. Suh are inconsistent with Dr. Suh's opinion about plaintiff's limitations.

The other basis for the ALJ's attribution of little weight to Dr. Suh's opinion was that it "appears based solely on the [plaintiff's] subjective complaints, as Dr. Suh appears to have only seen the [plaintiff] on one occasion." Tr. 18 ¶ 5. Consistent with this finding, Dr. Suh's note on his 15 December 2010 visit with plaintiff records her complaints of pain in her neck and lower back (as well as her right arm) since a fall down concrete stairs two and a half years earlier. Tr. 425. Since Dr. Suh did not see plaintiff after that visit and his findings during the visit do not support his opinion, it follows, as the ALJ found, that it is grounded on plaintiff's complaints. The fact that Dr. Suh saw plaintiff only once, rather than on a more frequent basis that would provide a longitudinal view, itself tends to undermine the authoritativeness of Dr. Suh's opinion. *See* 20 C.F.R. § 404.1527(d)(2).

Substantial evidence otherwise supports the ALJ's attribution of little weight to Dr. Suh's opinion and, more generally, his determination that plaintiff's orthopedic impairments do not prevent her from performing a range of light work. The ALJ summarized his assessment of this evidence as follows:

> Despite her complaints of neck and low back pain, repeat physical examinations have not shown any significant abnormalities. At most, the claimant had mild tenderness in the cervical and lumbar spine areas. There was full range of motion of the spine. Motor strength, reflexes, and sensation were intact. There were no neurological deficits. The claimant had a normal gait and stance and could perform tandem walk and heel and toe walk without difficulty. A cane or other assistive device has never been prescribed. Only conservative treatment with medication, injections, and/or physical therapy has been recommended. Moreover, surgery has never been recommended.

Tr. 17 ¶ 5. The examinations supporting this assessment include those by providers treating plaintiff. *See* Tr., *e.g.*, 320 (11 Mar. 2010; Beckford Medical Clinic), 355 (17 June 2010; Munther S. Tabet, M.D.), 379 (28 May 2010; Beckford Medical Clinic), 441 (16 Feb. 2011; Beckford Medical Clinic).

Unlike other examinations, an examination of plaintiff by a physician's assistant at Triangle Orthopaedic Associates, P.A. on 4 April 2011 revealed a decreased range of motion in her neck. Tr. 470; *see also* Tr. 15-16 ¶ 5 (ALJ's discussion of this provider's treatment of plaintiff). This visit followed up on one at that practice over a year earlier, on 29 March 2010, with a different physician's assistant. Tr. 473-75. Nevertheless, plaintiff elected to continue "conservative care," rather than surgery, which included a TENS[8] unit, Flector[9] patch, and steroid injections. Tr. 470-71.

---

[8] A "TENS" unit is a transcutaneous electrical nerve stimulation device used for pain conditions. *See* http://www.tensunits.com/ (last visited 9 Jan. 2013)

[9] A Flector patch is a topical treatment medication used for pain. *See* https://www.flectorpatch.com/index.aspx (last visited 9 Jan. 2013).

There was also a 29 July 2009 consultative examination by internist Joel Rapchik, M.D. Tr. 240-41; *see also* Tr. 16 ¶ 5 (ALJ's discussion of visit with Dr. Rapchik). While orthopedically he noted plaintiff's complaints of neck pain, both during the examination and by history, he found the examination was "unremarkable" and that plaintiff was "able to sit, stand, move about, lift, carry, handle objects, hear, speak and travel without significant difficulty." Tr. 241.

In addition, nonexamining consulting physician Alan B. Cohen, M.D. found in a 3 March 2010 physical RFC assessment (Tr. 310-17) that plaintiff was capable of light work with certain manipulative, postural, and environmental limitations. Tr. 311, 312, 313, 314, 317. The ALJ gave significant weight to this assessment because "it is largely consistent with the objective findings and longitudinal record." Tr. 18 ¶ 5. The court finds the ALJ's assessment of Dr. Cohen's opinion conforms to the applicable legal standards. *See* 20 C.F.R. § 404.1527(f).[10]

While rejecting plaintiff's contention that her orthopedic impairments are disabling, the ALJ manifestly did take them into account in his RFC determination. As indicated, it limited her to work at the light exertional level and to frequent, but not constant, overhead reaching. Tr. 14 ¶ 5.

The court concludes that the ALJ did not err in his evaluation of plaintiff's orthopedic impairments in determining her RFC. The court accordingly rejects this initial ground for plaintiff's challenge to the ALJ's RFC determination.

## 2. Plaintiff's Migraine Headaches

---

[10] The weight attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. *Id.* Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. *Id.* § 404.1527(f)(2)(ii).

Plaintiff contends that the frequency and duration of her migraine headaches prevent her from working "on a sustained and continuous basis," that is, eight hours per day for five days a week or its equivalent. Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2. In support of this contention, she relies on her own self-reports to Dr. Rapchik during his consultative examination on 29 July 2009 that she had a two-year history of migraines lasting about eight hours and occurring at a frequency of three to four times a week. Tr. 240; *see also* Tr. 16 ¶ 5 (ALJ's discussion of visit with Dr. Rapchik).

Substantial evidence supports the ALJ's determination that plaintiff's migraines do not preclude her from a limited range of light work. Dr. Rachik made no findings relating expressly to plaintiff's migraines other than noting her self-reported history of them. Tr. 241. Notably, her claim that the migraines extended back two years signifies that she had them at a time when she was still working.

Plaintiff did not see a neurologist for her migraines until 2010, specifically 17 June 2010, when she was examined by Munther S. Tabet, M.D. Tr. 354-62; *see also* Tr. 16 ¶ 5 (ALJ's discussion of Dr. Tabet's treatment of plaintiff). She reported headaches on a daily basis which, along with neck and shoulder pain, she had been treating for a year with simply ibuprofen. Tr. 354. Dr. Tabet prescribed Topamax for the migranes. Tr. 356. In a follow-up visit on 28 January 2011, plaintiff reported that she had stopped using the Topamax after three weeks because of side effects. Tr. 457. An MRI of the brain ordered by Dr. Tabet at the time was essentially normal. Tr. 457-58.

The ALJ summarized his assessment of this evidence as follows:

> With respect to the [plaintiff's] migraine headaches, the [plaintiff] appears to have worked with headaches and there is no evidence of worsening around the time she stopped working. Prior to seeing a specialist, she reported taking over-the-counter medications for pain relief for approximately one year. Additionally, although

she complained of daily headaches in June 2010, by January 2011, she reported migraine headaches occurring once per week. She also acknowledged self-discharge from Topamax, after only three weeks, due to perceived side effects. In fact, the [plaintiff's] treatment history does not substantiate the alleged frequency, severity, or duration of her headaches.

Tr. 17 ¶ 5.  As the prior discussion indicates, substantial evidence supports this evaluation.

The court concludes that the ALJ did not err in his evaluation of the evidence relating to plaintiff's migraines in determining plaintiff's RFC.  The court accordingly rejects this challenge to the ALJ's RFC determination.

### 3.    Plaintiff's Mental Impairments

Plaintiff contends that her depression and anxiety render her unable to concentrate sufficiently to work and to handle the stress of work activity or changes in a work setting irrespective of exertional level.  In support of her contention, she relies, in part, on a mental health evaluation by a physician's assistant at Carolina Behavioral Care on 14 December 2009. Tr. 308-09; *see also* Tr. 15 ¶ 5 (ALJ's discussion of evaluation).  She reported such symptoms as hopelessness, mood swings, sleep disturbances, and anxiety, and prior abusive relationships.  Tr. 308.  She was diagnosed with major depression and PTSD, for which she was prescribed Cymbalta.  Tr. 309.  Plaintiff also cites to her own testimony about her complaints of mental impairments, including depressive symptoms worsened by pain, anxiety attacks, thoughts of past abuse, crying spells, and difficulty concentrating.  *See* Tr. 31-32; *see also* Tr. 15 ¶ 5 (ALJ's discussion of plaintiff's testimony).

Nonetheless, substantial evidence supports the ALJ's determination that plaintiff's mental impairments are not disabling.  As the ALJ noted, "[plaintiff's] symptoms on mental status examinations have been routinely normal with few reports of mild symptoms and exacerbations related to relational and/or financial stressors."  Tr. 17 ¶ 5.  Such examinations include those by

treating providers. *See* Tr., *e.g.*, 225 (18 Mar. 2009; Franklin Regional Medical Center), 229 (13 Feb. 2009; Franklin Regional Medical Center), 355 (17 June 2010; Dr. Tabet), 395 (15 Dec. 2010; Dr. Suh), 379 (28 May 2010; Beckford Medical Clinic), 460 (4 Apr. 2011; Triangle Orthopaedic Associates, P.A.).

In addition, at a 24 September 2009 consultative examination by state agency psychologist Christopher M. Ricci, Ph.D., plaintiff reported that she was "feeling 'slightly' depressed and worries constantly about not being able to find a job as well as the fact that her fiancé had a heart attack and he is currently unable to work." Tr. 253; *see also* Tr. 17 ¶ 5; 18 ¶ 5 (ALJ's discussion of examination by and opinion of Dr. Ricci). She also reported performing a range of activities of daily living. Tr. 254. Although Dr. Ricci diagnosed plaintiff with adjustment disorder with anxiety and depressed mood (Tr. 254), he opined that she had the ability to perform work activities:

> [She] appears capable of following and understanding simple directions and instructions, performing simple tasks independently. She appears capable of maintaining attention and concentration and a regular schedule. She appears capable of learning new tasks and performing some complex tasks independently. She appears capable of making appropriate decisions, relating adequately with others. She is having some difficulty dealing with stress.

Tr. 254. The ALJ afforded some weight to Dr. Ricci's opinion, insofar as it was consistent with the longitudinal record. Tr. 18 ¶ 5. The court finds no error in the ALJ's treatment of Dr. Ricci's opinion. *See* 20 C.F.R. § 404.1527(d).[11]

Similarly, Jonathan Mayhew, Ph.D., a nonexamining state agency consulting psychologist, found in a 16 March 2010 mental RFC assessment (Tr. 329-32), as well as a psychiatric review technique form (Tr. 333-46), that plaintiff was capable of at least simple,

---

[11] The opinions of sources who examine a claimant are generally entitled to more weight than those of sources who did not perform an examination. *See* 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2. The weight ultimately attributed to medical opinions of nontreating examining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. *See* 20 C.F.R. § 404.1527(d).

routine, repetitive tasks. Tr. 331, 345; *see also* Tr. 266 (23 Oct. 2009 psychiatric review technique form finding plaintiff with only mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace). The ALJ gave Dr. Mayhew's opinion significant weight on the grounds that it is consistent with the other evidence of record. Tr. 18 ¶ 5. The court finds no error in this determination by the ALJ. *See* 20 C.F.R. § 404. 1527(f).

In addition, as the ALJ noted, plaintiff "has not sought ongoing outpatient mental health treatment or medication management and there is no evidence of psychiatric hospitalization." Tr. 17-18 ¶ 5. Plaintiff contends that she has not sought treatment because of financial constraints. Tr. 31-32. Of course, "[a] claimant may not be penalized for not seeking treatment she cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). But plaintiff herself admits that she had Medicaid coverage for mental health treatment. According to her testimony, the costs of a visit—a $3.00 co-pay plus the cost of gas to travel to the mental health clinic—are relatively modest, particularly considering the alleged extended duration of these impairments and thereby the opportunity to save these amounts. Tr. 31-32. Moreover, it is apparent that she had sufficient funds to travel to and obtain treatment from other providers. The court concludes that substantial evidence supports the ALJ's implicit determination that plaintiff did have the ability to obtain mental health treatment.

In any event, plaintiff's failure to seek ongoing mental health treatment is only one factor underlying the ALJ's finding that plaintiff's mental impairments are not as severe as alleged. The court finds that, even if this factor is disregarded, substantial evidence would continue to support the ALJ's determination that plaintiff's mental impairments are not disabling. In other words, disregard of this factor could not reasonably be expected to change the outcome of the

case.  Thus, any error by the ALJ with respect to plaintiff's ability to afford mental health treatment was harmless.  *See Allen v. Astrue*, No. 3:11-2427-JRM, 2012 WL 5873708, at *6 (D.S.C. 20 Nov. 2012) (finding that even if ALJ erred in discounting treating physician's opinion, "such error was harmless, as the ALJ proffered numerous other reasons . . . for discounting [the physician's] opinion that are supported by substantial evidence"); *Tomassetti v. Astrue*, No. 7:11-CV-88-D, 2012 WL 4321646, at *11 (E.D.N.C. 22 Aug. 2012) (Mem. & Recommendation) ("[E]ven if plaintiff did take prescribed medications in part for pain, the contrary finding by the ALJ would constitute harmless error and her credibility determination would remain supported by substantial evidence in light of the numerous other factors and large body of medical records and other evidence upon which she based her determination."), *adopted*, 2012 WL 4321632 (20 Sept. 2012).

Like Dr. Ricci, the ALJ cited plaintiff's activities of daily living as helping to show that her mental impairments are not disabling.  Tr. 18 ¶ 5.  He summarized them by stating:

> At all relevant times, she has been independent in her activities of personal care. She reported daily activities of feeding rabbits, cats, and dogs, as well as performing household chores. Moreover, she continued to drive, shop, attend church, and perform hobbies and crafts.

Tr. 18 ¶ 5.  This finding is supported by substantial evidence of record.  *See* Tr., *e.g.*, 26, 164, 174, 175, 253.

Notwithstanding the evidence tending to minimize plaintiff's mental impairments, the ALJ clearly did take them into consideration in fashioning plaintiff's RFC.  As noted, he found her limited to simple, routine, repetitive tasks.  Tr. 14 ¶ 5.

The court concludes that the ALJ did not err in his treatment of plaintiff's mental impairments in his RFC determination.  The court therefore rejects this challenge to the RFC determination.

17

### 4.    Combined Effect of Plaintiff's Impairments

While plaintiff contends that the combined effect of plaintiff's orthopedic, migraine, and mental impairments renders her disabled, the same body of evidence reviewed above constitutes substantial evidence supporting the ALJ's determination that they, in combination with plaintiff's other impairments, are not disabling. In sum, even when the effect of all of plaintiff's impairments is considered together, the RFC, as stated by the ALJ, "is supported by the objective medical evidence, the [plaintiff's] wide range of activities of daily living, and the evidence as a whole." Tr. 18 ¶ 5. The court therefore finds no error in the ALJ's RFC determination and rejects in its entirety plaintiff's challenge to it.

### E.    Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ did not properly evaluate the credibility of her allegations of limitations arising from her impairments, which, of course, she contends are disabling. The ALJ found the allegations not to be fully credible. Tr. 17 ¶ 5. The court finds that the ALJ committed no error.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.* at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "'specific reasons'" for that finding that are "'supported by the evidence.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July

1996)); *see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms).

At the hearing, plaintiff testified that she suffers from mobility issues and has constant pain in her neck and lower back, as well as hip pain while walking. Tr. 28, 29. She also testified about the purportedly disabling effects of her migraine headaches, depressive symptoms, anxiety attacks, crying spells, and difficulty concentrating. Tr. 31-32. She further stated that she spends most of her day lying down and drives only once per week for short distances. Tr. 26, 33-34. Family members with whom she lives, her husband, stepdaughter, mother-in-law, and father-in-law, assist with household chores. Tr. 33.

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 17 ¶ 5. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible. Tr. 17 ¶ 5. He stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 17 ¶ 5.

The ALJ adequately explained his credibility determination. Tr. 17-18 ¶ 5. He stated, in summary fashion, that plaintiff's "statements concerning her impairments and their impact on her ability to work do not support a finding of disability, in light of [plaintiff's] own description of her activities and lifestyle, the degree of medical treatment required, the reports of treating and examining practitioners, and the findings made on examination." Tr. 17 ¶ 5.

The ALJ then set out for each of plaintiff's principal sets of impairments the specific reasons why he did not find plaintiff's allegations fully credible. With respect to plaintiff's orthopedic, migraine headache, and mental impairments, these are the same reasons underlying

the ALJ's RFC determination discussed above. As detailed, substantial evidence of record supports these reasons.

The ALJ also explained his credibility determination with regard to plaintiff's hypothyroidism:

> [T]he evidence of record demonstrates that it can be successfully controlled with prescribed medications and without significant side effects. An exacerbation of symptoms occurred, when the claimant ran out of medication for a week.

Tr. 17 ¶ 5; *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling."). Substantial evidence of record supports this determination by the ALJ. *See* Tr.*, e.g.*, 222-25 (records of 18 Mar. 2009 emergency room visit for hypothyroidism noting plaintiff had been out of thyroid medications for about a week), 308 (report of 14 Dec. 2009 visit to Carolina Behavioral Care noting "[plaintiff] takes Synthroid for hypothyroid and said the free clinic had tested her thyroid level and she was told it was normal"), 463 (29 Mar. 2010 record of Triangle Orthopaedic Associates, P.A. noting that plaintiff takes Synthroid for her thyroid condition).

Plaintiff contends that the ALJ erred in requiring objective evidence of her pain. The court finds no error.

An ALJ is required to consider the extent to which a claimant's allegations of limitations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, *5. Thus, an ALJ is actually required to consider objective medical evidence in evaluating the credibility of a claimant's allegations. As noted, substantial evidence supports the ALJ's determination that the objective medical evidence here does not fully account for the limitations

plaintiff alleges. Moreover, the ALJ expressly relied on evidence other than objective evidence, including specifically plaintiff's range of activities of daily living.

Notwithstanding plaintiff's contentions, as the court has noted, the ALJ's RFC determination does reflect the limitations about which plaintiff complained by restricting her to a limited range of light work. The court concludes that the ALJ's determination on plaintiff's credibility is supported by substantial evidence and conforms to the applicable legal standards. Plaintiff's challenge to it is therefore meritless.

## III.     CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 9th day of January 2013.

_____
James E. Gates
United States Magistrate Judge